ORIGINAL

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JAN 1 3 2009

Stephan Harris, Clerk
Casper

Mary Ann Budenske Wyo Bar # 5-2883
Poverty Law Center of Wyoming
450 S. Wolcott
Casper, WY 82601
307-232-8725

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

Civil Action No. _____.

| | |
|---|---|
| Biodiversity Conservation Alliance, ) | |
| a Wyoming non-profit corporation, ) | |
| ) | 09 CV    08 ⊺ |
| Plaintiff, ) | |
| v. ) | COMPLAINT |
| ) | FOR DECLARATORY |
| ) | AND INJUNCTIVE |
| Bureau of Land Management, ) | RELIEF |
| a federal agency, ) | |
| ) | |
| Defendant. ) | |

### COMPLAINT

Receipt # CQS447
Summons:⌾ issued
_____ not issued

## I.     INTRODUCTION

1.  The Bureau of Land Management (referred to as the "BLM," "Agency" or "Defendant"), violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §1701, *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§701, *et seq.*, by unlawfully approving site-specific surface disturbing activities including, but not limited to, the Johan Infill Drilling Project Record of Decision (ROD) well as applications for Permits to Drill ("APD's") in connection with ongoing in-fill drilling on Federal public lands in the Jonah Infill Drilling Project Area ("JIDPA"), Sublette County, Wyoming.

2.  The present lawsuit concerns the BLM's failure to comply with Federal law in the implementation of an oil and gas infill drilling project on Federal public lands in Sublette County, Wyoming. On March 14, 2006, the BLM issued a Record of Decision ("2006 ROD") for the JIDPA authorizing a oil and gas infill drilling project of record-breaking intensity that allows the densest oil and gas well-spacing anywhere in the country.

3.  The JIDPA encompass a 30,500-acre area of Federal, State, and private  lands within the

2  Biodiversity Conservation Alliance

   Complaint for Declaratory and Injunctive Relief

Upper Green River Valley the southern end of the Greater Yellowstone Ecosystem and is just
south of Yellowstone and Grand Teton National Parks. The JIDPA comprises approximately
28,580 acres of federal surface and mineral estate (94%), 1,280 acres of state surface and mineral
estate (4%) and 640 acres of private surface/federal mineral estate (2%).

4. The ROD set in motion full field development with 64 to 128 wells for every square mile,
leaving two of every three acres of the project area bulldozed for well pads, roads, pipelines, and
ancillary facilities.

5. Prior to the 2006 ROD, the BLM in 2000 had previously authorized the drilling of oil and
gas wells on 497 well pads in the JIDPA under the Jonah II Project resulting in a surface
disturbance of a total of 4,209 acres of Federal public land. The 2006 Jonah Infill ROD
authorized the drilling of an additional 3,100 wells in the area. BLM assumed in the 2006 ROD
that drilling would occur at a rate of 250 wells per year. New access road, pipelines and other
facilities are currently being constructed in connection with the drilling of the wells. The 2006
ROD authorized 14,030 acres of surface to be disturbed at any one time and authorizes total
cumulative disturbance of 20,334 acres. The 2006 ROD assumed that drilling and development
in the JIDPA will last for 76 years.

3  Biodiversity Conservation Alliance
   Complaint for Declaratory and Injunctive Relief

6. The BLM based the 2006 ROD on a February 2005 Draft Environmental Impact Statement ("DEIS") and a January 2006 Final Environmental Impact Statement ("FEIS").

7. The 2006 ROD for the Johah Infill Drilling Project (hereinafter "JIDP") states:

> This decision is not the final review of approval for actions associated the JIDP. The Authorized Officer will review and authorize each component of the project that involved disturbance of federal lands on a site-specific basis. The methods used to evaluate and authorize each surface-disturbing activity include, but are not limited to, an APD, right-of-way (ROW) grant, Sundry Notice, or Special Use Permit with the supporting environmental review.

2006 ROD at 3.

9. Plaintiff Biodiversity Conservation Alliance ("Plaintiff" or the "Alliance") and others appealed the 2006 ROD to the U.S. Department of Interior's Interior Board of Land Appeals ("IBLA"). *See, Wyoming Outdoor Council, et al.*, IBLA 2006-155 & 2006-157. The Alliance's appeal to the IBLA was decided on September 11, 2008.

10. The Alliance has and continues to monitor the BLM's implementation of the 2006 ROD.

11. On July 29, 2008, the Alliance provided a notice letter to the BLM in an attempt to alert the agency to potential and ongoing violations of NEPA, FLPMA and the 2006 ROD in its implementation of in-fill drilling authorizations in the JIDPA. The Alliance raised three issues.

12. First, the BLM is not analyzing surface disturbing activities on federal lands on a site-specific basis. Through its continued use of categorical exclusions to environmental review and analysis under NEPA, the BLM is failing to meet its obligations under Federal law and does not take the required "hard look" at site-specific impacts and environmental effects when considering APD's in the JIDPA. Additionally, the BLM does not consistently define and utilize the unnecessary or undue degradation standard under FLPMA during the decision-making process for APDs.

13. The Alliance provided detailed information on six (6) drilling operations in the JIDPA for which analysis of surface disturbing activities on a site-specific basis was not occurring and for which no NEPA compliant environmental analysis exists. The six operations identified and discussed were Ultra Resources Well Number 14A-24 Stud Horse Butte – API # 49-035-24982, EnCana Well Number 49-31 Corona Unit – API # 49-035-24676, EnCana Well Number 65-30 Corona Unit – API # 49-035-25246, EnCana Well Number 45-22 Stud Horse Butte – API # 49-035-25203, Ultra Resources wells in Section 23, T29N, R108W and EnCana Well Number 32-10 Stud Horse Butte API # 49-035-25238. Upon information and belief, these well operations were categorically excluded from NEPA analysis by the BLM.

14. The Alliance also identified numerous drilling operations in the JIDPA at Township 29, North, Range 108 West and Township 29 North, Range 108 West which would unnecessarily impact crucial habitat to sage ground and pygmy rabbit and for which no NEPA compliant environmental analysis exists. Upon information and belief, these operations were categorically excluded from NEPA analysis by the BLM.

15. Second, the 2007 Jonah Field Wildlife Inventory and Monitoring Report ("2007 Wildlife Report"), prepared by Aster Canyon for the Jonah Field Operators, BLM and the Jonah Interagency Office ("JIO") provides significant new information that has not been addressed in any prior Environmental Impact Statement ("EIS"). The agency has failed to analyze the 2007 Report both in a field-wide supplemental EIS and in site-specific NEPA documentation at the APD authorization level.

16. The 2007 Wildlife Report evaluated trends and predicted cumulative impacts for species and habitat on the JIDPA and the three (3) mile buffer from 1997-2007. The 2007 Report, in conjunction with other studies, demonstrates declines in sage grouse populations in the Jonah field. The number of sage grouse nests recorded: 2 from 2007 season; 11 from the 2006 season; and 6 from the 2005 season; the number of clockers [illegible]: 6 from the 2007 season; 34 from the

2006 season; and 10 from the 2005 season.

17. Upon information and belief, the 2007 Wildlife Report was prepared pursuant to the guidelines and recommendations contained in the Wildlife Monitoring Plan for the Jonah Infill Drilling Project, 2007 prepared by the Jonah Interagency Mitigation and Reclamation Office ("JIO").

18. Last, the BLM has consistently failed to provide adequate public notice regarding availability of site-specific analysis and any related NEPA documents in the JIPDA. According to the BLM, since 2006 drilling is anticipated to occur in the JIDPA at a rate of 250 wells per year. Plaintiff, Biodiversity Conservation Alliance "the Alliance"), requested written notice of the availability of any and all future environmental documents of Notices of Staking or APDs for the JIPDA. Additionally, and in order to provide for meaningful participation by the public, the Alliance requested that notice be provided at each stage where the BLM could involve the public and prior to any final authorization of an APD in the JIDPA. The Alliance's request for written notification of the availability of NEPA documents and APDs prior to final authorization was denied by the BLM.

19. The BLM responded to the Alliance's July 29, 2008 notice letter on August 27, 2008.

20. First, the BLM states that all of the site specific drilling operations identified by the Alliance are categorically excluded from NEPA analysis under Section 390 of the Energy Policy Act of 2005. Specifically, the BLM asserts that Categorical Exclusion 2 of the Energy Policy Act "has been and is being appropriately applied concerning the APDs for wells within the JIPDA since the ROD was approved on March 27, 2006."

21. Upon information and belief, since March 27, 2006 the BLM has categorically excluded all drilling operations save a single well occurring in the JIDPA from NEPA analysis. Upon information and belief, the BLM has prepared an environmental document for only one out of hundreds of wells within the last five years pursuant to NEPA which analyzes the site specific impacts of drilling in the JIDPA.

22. Second, and with regard to the 2007 Wildlife Report, the BLM acknowledges that the 2007 Wildlife report "provides monitoring data for wildlife species," "certainly provides current wildlife data" and "acknowledges that impacts are occurring" to wildlife species in the JIDPA. Upon information and belief, the 2007 Wildlife Report and the data contained therein has never been analyzed in any NEPA document. Upon information and belief, the 2007 Wildlife Report supplements and modifies information contained in the 2006 ROD and FEIS.

23. Third, and with regard to the Alliance's request for public notice of site-specific analysis and any related NEPA documents as well as written notice of any and all future environmental documents for the JIDPA, the BLM denied the Alliance's request. As for NEPA documents, the BLM states that all categorical exclusions "are certainly available for public review at the Pinedale Field Office." As for APDs issued by the BLM for the JIDPA, the BLM states that the agency posts APDs "at our reception counter in the office entry-way for 30 days."

24. Plaintiff Biodiversity Conservation Alliance asks that the Court declare unlawful and set aside Defendant's approval of the following drilling operations: The Jonah Infill Drilling Project Record of Decision, Ultra Resources Well Number 14A-24 Stud Horse Butte – API # 49-035-24982; EnCana Well Number 49-31 Corona Unit – API # 49-035-24676; EnCana Well Number 65-30 Corona Unit – API # 49-035-25246; EnCana Well Number 45-22 Stud Horse Butte – API # 49-035-25203; Ultra Resources wells in Section 23, T29N, R108W; and, EnCana Well Number 32-10 Stud Horse Butte API # 49-035-25238. And limit the drilling of future wells to directional drilling conducted from existing well pads within the field. Such relief should be issued on the grounds that Defendant: (1) failed to evaluate compliance with FLMPA's undue and unnecessary degradation standard; (2) violated FLPMA's unnecessary or undue degradation

standard by permitting a full-field development of unnecessary wellpad density and undue level of impact on federal lands and wildlife habitats, (3) violated NEPA and its supporting regulations by failing to properly and fully analyze and disclose the potential environmental consequences of these major federal actions; and, (4) violated the APA by taking actions and making findings and conclusions that are arbitrary, capricious, abusive of discretion or otherwise not in accordance with law.

25. Plaintiff Biodiversity Conservation Alliance asks that the Court declare unlawful and set aside Defendant's approval of drilling operations in the JIDPA at Township 29, North, Range 108 West and Township 29 North, Range 108 West. Such relief should be issued on the grounds that Defendant: (1) failed to evaluate compliance with FLPMA's undue and unnecessary degradation standard; (2) violated FLPMA's undue and unnecessary degradation standard, (3) violated NEPA and its supporting regulations by failing to properly and fully analyze and disclose the potential environmental consequences of these major federal actions; (4) failed to provide adequate public notice of its actions under NEPA; (5) violated the APA by taking actions and making findings and conclusions that are arbitrary, capricious, abusive of discretion or otherwise not in accordance with law.

26. Plaintiff Biodiversity Conservation Alliance asks that the Court declare that Defendant has engaged in a continuing pattern and practice of violating NEPA's public notice requirements in taking federal action regarding authorization of drilling in the JIDPA and declare that issuance of all such future permits and/or authorizations shall comply with NEPA. In addition, Plaintiff seeks declaratory and injunctive relief which requires Defendant to comply with NEPA and public notice and comment procedures in the future issuance of any future APDs and/or site-specific authorizations.

27. Specifically, Plaintiff seeks court ordered relief which instructs BLM to provide greater public notice and involvement in NEPA permitting actions including: (1) notice to interested parties; (2) 30-day publication of proposed agency actions in local periodicals; and/or, (3) notice published in the Federal Register.    Additionally, Plaintiff seek court ordered relief which instructs BLM to make NEPA permitting materials available to the interested public in advance of final agency decisions. Plaintiff also seeks court ordered relief which instructs BLM to cease to permit additional construction of roads and well pads in the JIDPA in areas where well densities have already reached one pad per 640-acre section (permitting additional wells from existing well pads only), limiting future well pad density to one well pad per section.

28. Plaintiff Biodiversity Conservation Alliance asks that the Court declare that Defendant violated NEPA in failing to supplement its FEIS and/or any ongoing site-specific NEPA analysis in the JIDPA to account for significant new circumstances or information or substantial changes in the proposed action provided by the 2007 Wildlife Report.

29. Unless ordered by this Court, Defendant will not carry out the required NEPA scrutiny and analysis before issuance of any future APDs or other related activities in the JIDPA. Unless directed by this court, BLM will not conduct NEPA analysis to identify, disclose, and address: (1) the impacts to wildlife species including, but not limited to, sage grouse, sagebrush obligate songbirds, and pygmy rabbit; (2) any site specific on-site mitigation measures necessary to protect wildlife species; (3) any compensatory off-site mitigation measures necessary to protect wildlife species; and, (4) available alternatives courses of action.

30. Defendant's failure to carry out NEPA and FLPMA requirements is contrary to law and causes procedural harms which can be remedied by declaratory judgment and injunctive relief that invalidates BLM's authorizations challenged herein and a remand that compels the agency to carry out the NEPA duties that Congress has imposed on this federal agency.

## II. JURISDICTION AND VENUE

31. This Court has jurisdiction to review agency action and to order effective relief sought in this civil action pursuant to 28 U.S.C. §§ 1331 (federal question); 1346 (United States as defendant); 1361 (mandamus); 2201 (declaratory relief); 2202 (injunctive relief); and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* There is a present and actual controversy between the parties that is ripe for judicial review.

32. Where a federal agency fails to adhere to procedural requirements of the APA or the requirements of reasoned/open/informed agency decision making such as are set forth in NEPA, the APA explicitly waives sovereign immunity and provides a cause of action that provides for judicial review of the federal agency's actions and omissions. 5 U.S.C. § 701 *et seq.*

33. The project area at issue in this lawsuit is located in Sublette County, Wyoming on federal land within the boundaries of the JIDPA. The agency's actions and approvals and violations of federal law that are addressed in this complaint transpired in Wyoming. Venue in this Court is therefore proper under 28 U.S.C. § 1391(e).

34. There was no opportunity for Plaintiff or the public to administratively appeal the BLM's decision to categorically exclude the Ultra Resources Well Number 14A-24 Stud Horse Butte – API # 49-035-24982, EnCana Well Number 49-31 Corona Unit – API # 49-035-24676, EnCana

13  Biodiversity Conservation Alliance

Complaint for Declaratory and Injunctive Relief

Well Number 65-30 Corona Unit – API # 49-035-25246, EnCana Well Number 45-22 Stud

Horse Butte – API # 49-035-25203, Ultra Resources wells in Section 23, T29N, R108W and

EnCana Well Number 32-10 Stud Horse Butte API # 49-035-25238 from NEPA analysis. The

BLM did not inform or instruct Plaintiff or the public of any available administrative appeal

rights. No administrative remedies were available to Plaintiff to appeal the BLM's categorical

exclusion determinations.

### III. PARTIES

35. Plaintiff, BIODIVERSITY CONSERVATION ALLIANCE (the "Alliance") is a non-

profit conservation group with hundreds of members in Wyoming and other states. The Alliance

is dedicated to protecting Wyoming's wildlife and wild places, particularly on public lands. The

Alliance's members live in or near the JIDPA and utilize the land and water resources within and

near this areas for hiking, fishing, camping, recreational, scientific study, photography and

aesthetic uses. The Alliance and its members are actively involved in BLM review of oil and gas

activities in this region and participate in all NEPA stages of BLM oil and gas projects by

submitting comments and attending public meetings. The Alliance has a long record of

advocating for environmentally sound oil and gas development in Wyoming and throughout the

West.  As a consequence, the Alliance and its members would be adversely affected by the BLM's authorization of drilling operations in the JIDPA and they have an interest in this matter. The Alliance and their members benefit from the intact ecosystem of the JIDPA as it exists today.

36.  The Alliance and its members have been active participants in the ongoing management of the JIDPA.  The Alliance has attended numerous private and public meetings related to management of the JIDPA including, but not limited to, scoping meetings held in Pinedale, Wyoming in April and November of 2003 and related to operators' proposal to infill drill in the Jonah natural gas field.   The Alliance submitted scoping comments to the BLM on this same proposal. The Alliance submitted extensive comments on the Draft EIS for the JIDPA.

37. The Alliance and others appealed the 2006 ROD to the U.S. Department of Interior's Interior Board of Land Appeals ("IBLA").  *See, Wyoming Outdoor Council, et al.*, IBLA 2006-155 & 2006-157.  The Alliance's appeal to the IBLA was decided on September 11, 2008.

38. In October of 2007, the Alliance submitted a FOIA request to the BLM requesting the following records:

15  Biodiversity Conservation Alliance

   Complaint for Declaratory and Injunctive Relief

1   Any and all records and documents of whatever nature prepared pursuant to NEPA
    which implement the Record of Decision signed March 14, 2006 for the JIDP in
    Sublette County, Wyoming.

2   Any and all records and documents of whatever nature prepared pursuant to NEPA
    which implement NEPA for the following Applications for Permit to Drill
    ("APD") for the Jonah Infill Drilling Project in Sublette County, Wyoming:

Township 29 North, Range 108 West, Section 21:  Ultra Resources Inc.

| | |
|---|---|
| WYO&GCC Api: | 49-035-24985, Stud Horse Butte 8D-21 |
| | 49-035-24990. Stud Horse Butte 9C-21 |
| | 49-035-24728, Stud Horse Butte 10D-21 |
| | 49-035-24987, Stud Horse Butte 16D-21 |
| | 49-035-24992, Stud Horse Butte 16A-21 |
| | 49-035-24986, Stud Horse Butte 16C-21 |
| | 49-035-24987, Stud Horse Butte 16D-21 |
| | 49-035-24991, Stud Horse Butte 15A-21 |

Township 29 North, Range 108 West, Section 11:  EnCana Oil and Gas (USA)

| | |
|---|---|
| Inc.  WYO&GCC Api: | 49-035-25866, Stud Horse Butte 56-11 |
| | 49-035-25889, Stud Horse Butte 73-22 |

39. Based on the Alliance's review of records released by the agency in response to the
Alliance's October 2007 FOIA, the Alliance wrote a letter to the agency on July 29, 2008.  The
Alliance's letter included over thirty-six (36) exhibits.

16   Biodiversity Conservation Alliance

Complaint for Declaratory and Injunctive Relief

40. The agency responded to the Alliance's letter on August 27, 2008. There was no ability for the Alliance to administratively appeal the agency's August 27, 2008 letter. The Alliance has exhausted all administrative remedies related to the agency's August 27, 2008 letter. There was no ability for the Alliance to administratively appeal any of the BLM's categorical exclusion determinations described in the Alliance's July 29, 2008.

41. In response to the complexities of managing the JIDPA and to ensure informed public involvement in these matters, the Alliance has repeatedly requested that the BLM use the NEPA process to address site specific drilling proposals on the JIDPA.

42. The BLM's authorizations will harm the biological integrity of the area which the Alliance strives to protect. The drilling authorizations granting use and occupancy of the JIDPA are causing, and continue to cause direct, immediate and irreparable informational and procedural injury to the Alliance's interests by denying the group and its members the right to informed decision making and full disclosure under NEPA. Unless relief is granted, the unique hydrological, educational, wildlife, recreational and other diverse resources that Congress recognized as deserving preservation for the enjoyment of future generations, will not be protected. Unless the relief prayed for herein is granted, the Alliance and its members will

continue to suffer ongoing and irreparable harm and injury to their interests, including their future use and enjoyment of the wildlife and related recreational purposes of the JIDPA.

43. Granting the requested relief can remedy the injuries to the Alliance by providing the informed decisionmaking and public participation that Congress through NEPA put in place to afford substantive protections for the federal public lands.

44. Defendant, the BUREAU OF LAND MANAGEMENT ("BLM") is the federal agency within the U.S. Department of the Interior responsible for managing the JIDPA. In carrying out its management of the JIDPA, the BLM is required to review and authorize each individual component of the 2006 ROD. In carrying out its management of the JIDPA, the BLM must authorize each surface disturbing activity including, but not limited to, an APD, right-of-way ("ROW") grant, Sundry Notice or Special Use Permit. Each authorized surface disturbing activity must be accompanied by supporting environmental review. The BLM is required to comply with NEPA in authorizing site-specific surface disturbing activities in the JIDPA. The BLM's authorization of site-specific surface disturbing activity in the JIDPA is ongoing.

45. The BLM must consider and disclose the impacts of its site-specific authorizations in the JIDPA to the public through the specific processes and environmental analyses that are set

forth in NEPA. The BLM is regulated by NEPA in order to ensure informed decisionmaking and public participation regarding the proposed uses that the BLM approves or assists in the JIDPA and Federal lands under its supervision. BLM is also responsible for ensuring that its actions do not have adverse environmental impacts or limit the choice of reasonable alternatives for management of the JIDPA pending the completion of the required NEPA analysis in this case.

46. The BLM is the agency responsible for authorizing drilling operations in the JIDPA including Ultra Resources Well Number 14A-24 Stud Horse Butte – API # 49-035-24982, EnCana Well Number 49-31 Corona Unit – API # 49-035-24676, EnCana Well Number 65-30 Corona Unit – API # 49-035-25246, EnCana Well Number 45-22 Stud Horse Butte – API # 49-035-25203, Ultra Resources wells in Section 23, T29N, R108W and EnCana Well Number 32-10 Stud Horse Butte API # 49-035-25238.

47. The BLM is the agency responsible for authorizing drilling operations in the JIDPA at Township 29, North, Range 108 West and Township 29 North, Range 108 West.

48. The 2007 Wildlife Report was prepared by Aster Canyon for the BLM. The BLM is responsible for reviewing and evaluating the 2007 Wildlife Report.

49. Plaintiff has not joined the non-federal owners or lessees of the private mineral estate

in this action against a federal agency under federal law. Plaintiff does not believe there are any necessary or indispensable parties to this federal lawsuit seeking to enforce the informed decisionmaking and public participation requirements of the NEPA. Plaintiff has brought this lawsuit in federal court to settle a dispute with a federal agency over the statutory construction of federal laws applicable to all federal agencies.

## V.    PROCEDURAL BACKGROUND

50. The factual record in this case will be established and the case resolved pursuant to judicial review based on provisions of the APA. The parties and the Court will undertake a searching review of the whole administrative record, with limited discovery and supplementation as allowed by relevant caselaw.

51. Plaintiff's statement of facts relies heavily on investigations, information, and review of documents that should be contained in the agency's administrative record. Plaintiff has already done significant work in compiling and reviewing agency documents that should be included in the administrative record as defined by the APA and relevant caselaw.

52. In order to ensure efficient and timely adjudication of this matter, Plaintiff will separately request by letter to Defendant that Defendant assemble and certify the administrative

record on the same date as it files its Answer or other responsive pleading.   This request is reasonable since Defendant's investigations into the allegations in this Complaint should require the assembly and review of the whole administrative record before Defendant can competently file an Answer or other responsive pleading.

## VI. STATEMENT OF FACTS

53. The present controversy concerns.

*A. THE JONAH INFILL DRILLING PROJECT AREA*

54. The JIDPA encompass a 30,500-acre area of Federal, State, and privates lands within the Upper Green River Valley the southern end of the Greater Yellowstone Ecosystem and is just south of Yellowstone and Grand Teton National Parks. The JIDPA comprises approximately 28,580 acres of federal surface and mineral estate (94%).

55. The JIDPA includes important habitats for the greater sage grouse, a Wyoming BLM Sensitive Species. These sensitive habitats include breeding areas, known as "leks," which sage grouse return to year after year to display and mate; nesting habitats, concentrated within 3 miles of the lek site, and wintering habitats. The U.S. Fish and Wildlife Service has made a positive 90-day finding with regard to listing the sage grouse under the Endangered Species Act, which means that the agency has found sufficient biological evidence that listing the sage grouse may be warranted. A final decision on Endangered Species listing is currently pending.

56. The JIDPA provides key habitat for the pygmy rabbit, a BLM Sensitive Species which has been documented through sighting and burrow records throughout the JIDPA. The U.S. Fish and Wildlife Service has made a positive 90-day finding with regard to listing the sage grouse under the Endangered Species Act, which means that the agency has found sufficient biological evidence that listing the pygmy rabbit may be warranted. A final decision on Endangered Species listing is currently pending.

57. The JIDPA includes sensitive habitat for several sagebrush obligate songbirds which are on the Wyoming BLM's Sensitive Species List, including the sage sparrow, Brewer's sparrow, and sage thrasher.

*B. THE 2006 ROD AND FEIS*

58. On March 14, 2006, the BLM issued the 2006 ROD for the JIDPA setting forward a record-breaking oil and gas infill drilling project that allows the densest oil and gas well-spacing anywhere in the country, approving wells at 5- to 10-acre spacing, or 64 to 128 wells per square mile. By comparison, the standard well spacing for natural gas wells in Wyoming is 160-acre spacing, or 4 wells per square mile.

59. The BLM's 2006 ROD sets in motion the potential development of 2 of every 3 acres of the JIDPA for oil and gas leaving 99.98% of the wildlife habitat within 1/4 mile, and 99.2% within 1/8 mile, of actual oil and gas development over the next 76 years.

60. The likely impact of the approved project on sage grouse will be complete loss of sage grouse populations within the JIDPA as a result of direct development impacts and habitat

fragmentation. A scientific study of impacts of oil and gas activities on sage grouse in the Pinedale Anticline and Jonah Fields, completed in 2005 and funded by BLM and the oil and gas industry, found that wells sited within 1.9 miles of sage grouse leks exerted a negative influence on sage grouse breeding populations at leks after drilling has ceased and production operations were underway. The same study found that active drilling within 3.1 miles of a sage grouse lek reduced the number of breeding males that used the lek. In addition, as well densities increased, the number of breeding males on affected leks decreased, and well densities of 1 or more well pads per square mile reduced the number of males at affected leks. This study also documented avoidance of areas of dense wellsites for nesting females, and lower survival rates for nesting females in developed areas.

61. Pygmy rabbits are residents of dense stands of old, tall sagebrush within the Jonah Field, and are negatively affected by habitat fragmentation. Areas degraded by habitat fragmentation have been found to be "unlikely to support long-term viable populations of pygmy rabbits." Pygmy rabbit expert Todd Katzner reviewed the level of development approved for the Jonah Field and concluded, "It is almost inconceivable that the pygmy rabbit population in this area can maintain its current numbers in the face of such development."

62. Oil and gas development at the density approved for the Jonah Field causes direct habitat loss and habitat fragmentation that degrade habitat used by sagebrush obligate songbirds on the BLM Sensitive Species list. In a study conducted within the Jonah Field of western Wyoming, the density of sagebrush-obligate birds within 100 meters of roads constructed for natural gas development was 50% lower than at greater distances. Experts have concluded that the level of development density in the Jonah Field would "likely result in the local extirpation of shrubsteppe-obligate bird species within the construction perimeter."

23  Biodiversity Conservation Alliance

Complaint for Declaratory and Injunctive Relief

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the Federal Land Policy and Management Act, 43 U.S.C. §§1701 et seq.:** *Defendant violated FLPMA by failing to "take any action necessary to prevent unnecessary or undue degradation of the lands" in approving the Jonah Infill Development project Record of Decision by approving an extremely dense well density that was both unnecessary to produce the oil and gas resource and caused undue degradation to the lands, particularly to the habitats of BLM Sensitive Species. See 43 U.S.C. § 1732(b).*

63. By approving the 2006 ROD for the Jonah Infill Drilling Project without defining and utilizing the unnecessary or undue degradation standard under FLPMA prior to approving the Jonah Infill Drilling Project, nor has the agency consistently defined and utilized the unnecessary or undue degradation standard under FLPMA during the decision-making process for APDs.

64. By approving an intensity of drilling approved under the Jonah Infill Drilling Project Record of Decision, which approved 64 to 128 surface well locations per square mile in addition to associated roads and pipelines, Defendant permitted unnecessary degradation pursuant to FLPMA because the project could have been fully developed using directional drilling using

24  Biodiversity Conservation Alliance

  Complaint for Declaratory and Injunctive Relief

multiple wells per wellpad, thus markedly reducing the level of industrial impact. BCA filed a Freedom of Information Act request for Applications for Permit to Drill in the Jonah Field on October 30, 2007; BLM's response showed that all of BP's wells in the Jonah Field had been drilled directionally. In addition, an EnCana report submitted to BLM by the Plaintiff identifies over 140 wells drilled directionally between the expiration of original Jonah Field decision and the approval of the Jonah Infill Drilling Project. Oil and gas operators consistently drill directionally in the adjacent Pinedale Anticline field, which taps the exact same geological formation, clustering as many as 32 wells on a single wellpad.

65. The level of environmental impact approved under the Jonah Infill Drilling Project Record of Decision ("ROD") constitutes undue degradation of federal lands pursuant to FLPMA, particularly with regard to undue degradation to the habitats of BLM Sensitive Species which are obligate residents of mature sagebrush habitats. In particular, the sage grouse, the pygmy rabbit, the sage sparrow, the Brewer's sparrow, and the sage thrasher occupy sagebrush habitats within the Jonah Field, and the level of destruction of sagebrush habitat approved under the ROD is likely to prevent these species from inhabiting the project area.

## SECOND CLAIM FOR RELIEF

25  Biodiversity Conservation Alliance

Complaint for Declaratory and Injunctive Relief

**Violation of the National Environmental Policy Act, 42 U.S.C. §§4321 *et seq.*, and the Administrative Procedures Act:** *Defendant acted arbitrarily and capriciously by Categorically Excluding BLM's consideration and approval of Ultra Resources Well Number 14A-24 Stud Horse Butte – API # 49-035-24982, EnCana Well Number 49-31 Corona Unit – API # 49-035-24676, EnCana Well Number 65-30 Corona Unit – API # 49-035-25246, EnCana Well Number 45-22 Stud Horse Butte – API # 49-035-25203, Ultra Resources wells in Section 23, T29N, R108W and EnCana Well Number 32-10 Stud Horse Butte API # 49-035-25238 oil and gas wells from analysis under NEPA.*

66. Plaintiff repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

67. By authorizing Ultra Resources Well Number 14A-24 Stud Horse Butte – API # 49-035-24982, EnCana Well Number 49-31 Corona Unit – API # 49-035-24676, EnCana Well Number 65-30 Corona Unit – API # 49-035-25246, EnCana Well Number 45-22 Stud Horse Butte – API # 49-035-25203, Ultra Resources wells in Section 23, T29N, R108W and EnCana Well Number 32-10 Stud Horse Butte API # 49-035-25238 (hereinafter "Encana and Ultra Resources drilling operations") based on an unlawful "categorical exclusion" from NEPA analysis, BLM violated the National Environmental Policy Act ("NEPA") and the Counsel on Environmental Quality ("CEQ") regulations implementing NEPA by taking federal action which "may have a significant environmental effect" and/or which constituted an "extraordinary

circumstance" without first preparing an Environmental Assessment ("EA") and/or Environmental Impact Statement ("EIS"). 40 C.F.R. §§ 1508.4, 1508.7, 1508.8.

68. NEPA requires the federal agencies to conduct the NEPA process and produce an EA and/or EIS for all "major Federal actions significantly affecting the quality of the human environment..." 42 U.S.C. §4332(B). "Major Federal Actions" include "actions with effects that may be major and which are potentially subject to Federal control and responsibility" and "include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies..." 40 C.F.R. §1508.18.

69. In reviewing, accepting, authorizing, approving, regulating and/or assisting with Encana and Ultra Resources drilling operations in the JIDPA as set forth in this Complaint, Defendant did not comply with the NEPA process or prepare NEPA documentation.

70. No site-specific NEPA analysis has ever been prepared for the Encana and Ultra Resources drilling operations. The impacts of the Encana and Ultra Resources drilling operations were not analyzed in an amended FEIS or ROD. The site-specific impacts of the Encana and Ultra Resources drilling operations have never been analyzed in any NEPA

document.

71. Defendant violated NEPA by failing to adhere to the NEPA process, to produce an EA or EIS, to take the required hard look at the environmental impacts of its action, to analyze adequately the direct, indirect or cumulative impacts and to ensure compliance with the Federal Land Policy and Management Act's ("FLPMA's") Undue and Unnecessary Degradation ("UUD") standard before providing federal approvals, assistance and authorization of Encana and Ultra Resource's drilling operations in the JIDPA.

72. According to Defendant's August 27, 2008 letter, Defendant categorically excluded Encana and Ultra Resource's drilling operations from NEPA review based on a misreading of Section 390 of the Energy Policy Act of 2005 ("2005 EPA"). Specifically, Defendant asserts that,

> Categorical Exclusion 2 has been and is being appropriately applied concerning the APDs for wells with the JIDPA since the ROD was approved on March 27, 2006. CX 2 specifically states, 'Drilling an oil or gas well within a developed field for which an approved land use plan or any environmental document prepared pursuant to NEPA analyzed such drilling as a reasonably foreseeable activity, so long as such plan or document was approved within 5 years prior to the date of spudding the well.'

Upon information and belief, Defendant's August 27, 2008 letter erroneously cites Categorical

Exclusion 2. Upon information and belief, Defendants are relying upon Categorical Exclusion 3 of the EPA, 42 USCS §15942(b)(3), to categorically exclude analysis of surface disturbing activities from NEPA review in the JIDPA.

72. Defendant's post-hoc reliance on the 2005 EPA and Categorical Exclusion 3 to categorically exclude analysis of surface disturbing activities from NEPA review in the JIDPA is contrary to the BLM's 2006 ROD for the JIDPA.

73. The 2006 ROD which was issued after passage of the 2005 EPA states,

This decision is not the final review of approval for actions associated the JIDP. The Authorized Officer will review and authorize each component of the project that involved disturbance of federal lands on a site-specific basis. The methods used to evaluate and authorize each surface-disturbing activity include, but are not limited to, an APD, right-of-way (ROW) grant, Sundry Notice, or Special Use Permit with the supporting environmental review.

2006 ROD at 3.

74. NEPA compliance at the site specific level was contemplated by the 2006 ROD.

APD processing includes review of the surface-disturbing activity application and on-site inspection of proposed locations. Resource specialists manage the various aspects of this process and ensure NEPA analyses, on-site visits, site-specific conditions of approval (COAs), and mitigation requirements are appropriate.

2006 ROD at 7.

75. Additionally, and assuming *arguendo* that Encana and Ultra Resource's drilling operations may be categorically excluded from NEPA analysis, the Alliance's July 29, 2008 letter demonstrated that extraordinary circumstances exist which necessitate site-specific NEPA analysis and that the drilling operations would have significant environmental effect. Categorical exclusions from NEPA are inapplicable where "extraordinary circumstances" exist or where the "action may have a significant environmental effect." 40 C.F.R. § 1508.4.

76. Here, extraordinary circumstances exist that do not substantiate BLM's use of categorical exclusions for Encana and Ultra Resource's drilling operations. These extraordinary circumstances include, but are not limited to: (1) wells within 2 miles of sage grouse leks or with evidence of nesting activity in which significant impacts to breeding and nesting sage grouse would be expected based on the best available science; and (2) wells located in areas where pygmy rabbits or their burrows have been documented, the construction of which would be expected to have a significant environmental impact on this BLM Sensitive Species.

77. As a result of the agency's failure to conduct the NEPA process before providing federal approvals, assistance and authorization of Encana and Ultra Resource's drilling

30  Biodiversity Conservation Alliance

   Complaint for Declaratory and Injunctive Relief

operations in the JIDPA, Defendant violated NEPA and its implementing regulations, acted arbitrarily and capriciously, abused its discretion, failed to act in accordance with law and therefore has violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).

78. For reasons stated herein, BLM's use of categorical exclusions fails to comply with NEPA and is arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA, 5 U.S.C. §§ 551 *et seq.*, and is subject to judicial review hereunder.

79. Because the BLM's authorization of drilling operations in the JIDPA is ongoing, Defendant's use of categorical exclusions and failure to conduct site-specific NEPA process and before providing federal site-specific approvals, assistance and authorization of drilling operations in the JIDPA is capable of repetition.

## THIRD CLAIM FOR RELIEF

**Violation of the National Environmental Policy Act and the Administrative Procedures Act:** Defendant acted arbitrarily and capriciously by *Failing to Supplement Its NEPA Analysis to Account for Significant New Circumstances or Information or Substantial Changes In the Proposed Actions.*

80. Plaintiff repeats and incorporates by reference the allegations in the above paragraphs

31  Biodiversity Conservation Alliance

Complaint for Declaratory and Injunctive Relief

and all paragraphs of this Complaint.

81. An agency's NEPA duties do not end when it completes its initial environmental analysis and approves a federal project. As the Supreme Court has explained, "[i]t would be incongruous with . . . the Act's manifest concern with preventing uninformed action, for the blinders to adverse environmental effects, once unequivocally removed, to be restored prior to the completion of agency action simply because the relevant proposal has received initial approval." Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 371 (1990). Thus,

> [i]f there remains "major federal action" to occur, and if . . . new information is sufficient to show that the remaining action will "affect[t] the quality of the human environment" . . . to a significant extent not already considered, a supplemental EIS must be prepared.

Id. at 374. *See also* 40 C.F.R. § 1502.9(c)(regulations mandating supplementation); SUWA v. Norton, 475 F.Supp.2d 1253 (D.C. Utah 2006)(finding supplemental NEPA analysis necessary where information underlying NEPA decision was "not new" and was tiered to "outdated EISs and EAs"). NEPA's duty to supplement applies equally to environmental impact statements and environmental assessments. SUWA at 1263 (*citing* Idaho Sporting Congress v. Thomas, 137 F.3d 1146, 1152 (9th Cir. 1998)).

82. The 2007 Wildlife Report constitutes significant new circumstances or information relevant to the BLM's continued authorization of oil and gas drilling in the JIDPA. The 2007 Wildlife Report has never been analyzed in any NEPA document. The 2007 Wildlife Report is a connected action under NEPA.

83. BLM's failure to comply with NEPA and supplement its NEPA analysis to account for significant new circumstances or information or substantial changes in the proposed action is arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA, 5 U.S.C. §§ 551 *et seq.*, and is subject to judicial review hereunder.

## FOURTH CLAIM FOR RELIEF

**Violation of the National Environmental Policy Act and the Administrative Procedures Act:** Defendant acted arbitrarily and capriciously by *failing to provide adequate public notice and participation.*

84. Plaintiff repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

85. BLM's failure to provide adequate public notice and participation in the authorization of Encana and Ultra Resources drilling operations in the JIDPA is part of an ongoing pattern and practice of the BLM taking site-specific federal action in the JIDPA in violation of NEPA's

requirement that, to the fullest extent possible, all federal agencies are obligated to "[e]ncourage and facilitate public involvement in decisions which affect the quality of the human environment." 40 C.F.R. §1500.2(d).

86. In 2006-2007, as part of a pattern an practice of failing to provide public notice of its site-specific actions and approvals in the JIDPA, BLM provided no notice of the Encana and Ultra Resources drilling operations, did not identify a NEPA comment opportunity and violated NEPA's public participation regulations which require BLM to "(a) [m]ake diligent efforts to involve the public in preparing and implementing their NEPA procedures" and to "(b) [p]rovide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected." 40 C.F.R. §1506.6.

87. "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." 40 C.F.R. §1500.1; 40 C.F.R. §1506.6(b)(1)("Agencies shall: . . . In all cases the agency shall mail notice to those who have requested it on an individual action."). NEPA implementing regulations additionally provide extensive public involvement requirements. Id. at §1506.6.

88. BLM did not provide notice to the public of the availability of BLM's decision to categorically exclude Encana and Ultra Resources' drilling operations from NEPA analysis. Notice of the BLM's decision to categorically exclude the Encana and Ultra Resources' drilling operations from NEPA analysis was not provided to the Alliance or its members. Notice of the BLM's decision to categorically exclude the Encana and Ultra Resources drilling operations from NEPA analysis was not published in the Federal Register. Notice of the BLM's decision to categorically exclude the Encana and Ultra Resources drilling operations from NEPA analysis was not posted on the web-based BLM-Wyoming NEPA Register or any other web site. Notice of the BLM's decision to categorically exclude Encana and Ultra Resources' drilling operations from NEPA analysis was not published in local newspapers or through other local media. Notice of the BLM's decision to categorically exclude the Encana and Ultra Resources' drilling operations from NEPA analysis was not posted in the BLM's Pinedale Field Office prior to agency authorization of drilling.

89. The Alliance's July 29, 2008 notice letter to the BLM specifically requested notice of individual action (*i.e.* notice of the 250 wells drilled annually) occurring in the JIDPA. "The Alliance respectfully requests written notice of the availability of any and all future environmental

documents of Notices of Staking or APDS for the JIPDA." Additionally, "[i]n order to provide for meaningful participation by the public, the Alliance and its members, the Alliance requests that notice be provided at each stage where the BLM could involve the public and prior to any final authorization of an APD in the JIDPA."

90. NEPA's implementing regulations require that "[i]n all cases the agency shall mail notice to those who have requested it on an individual action." 40 C.F.R. §1506.6(b)(1).

91. In response to the Alliance's request, the BLM on August 27, 2008 stated that, while the agency was "more then willing to provide such documents," because Notices of Staking or APDs "are statutorily exempt from analysis under NEPA" notice to the Alliance was not required.

92. Upon information and belief, BLM decisions to categorically exclude Notices of Stakings or APDs in the JIDPA from NEPA analysis are not posted on the Pinedale Field Office's web-based BLM-Wyoming NEPA register. Upon information and belief, no site-specific NEPA documents for the JIDPA are posted on the Pinedale Field Office's web-based BLM-Wyoming NEPA register.

93. Upon information and belief, BLM decisions to categorically exclude Notices of Staking or APDs in the JIDPA from NEPA analysis are not posted in the Pinedale Field Office

prior to BLM authorization.

94. BLM's failure to provide adequate public notice of the availability of NEPA documentation for the Encana and Ultra Resources' drilling operations and prior to any final authorization of such operations in the JIDPA is arbitrary and capricious, an abuse agency discretion, a failure to act in accordance with law and thereby a violation of the APA, 5 U.S.C. § 706(2)(A).

95. BLM's failure to provide adequate public notice of the availability of NEPA documentation for ongoing drilling operations in the JIDPA and prior to any final authorization of such operations in the JIDPA is arbitrary and capricious, an abuse agency discretion, a failure to act in accordance with law and thereby a violation of the APA, 5 U.S.C. § 706(2)(A).

96. BLM's failure to provide adequate public notice of the availability of NEPA documentation for ongoing drilling operations in the JIDPA is capable of repetition.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment providing the following relief:

1.    Declare that Defendant violated the Federal Land Policy and Management Act ("FLPMA") by permitting a level of development density that is unnecessary to recover the fluid mineral resource and results in undue impacts to the habitat of sensitive wildlife species;

2.    Declare that Defendant violated the National Environmental Policy Act ("NEPA") and Administrative Procedures Act ("APA") by failing to conduct the NEPA process, prepare NEPA documentation and take a "hard look" at Encana and Ultra Resources drilling operation in the JIDPA;

3     Declare that Defendant has and is engaged in a continuing pattern and practice of violating NEPA and the APA by categorically excluding all site-specific oil and gas drilling operations in the JIDPA from the NEPA process, NEPA documentation and analysis thereunder;

4.    Declare that Defendant has engaged in a continuing pattern and practice of violating NEPA's public notice requirements in taking site specific federal action in the JIDPA;

5.    Declare that issuance of all future APDs and other related authorizations in the JIDPA

shall comply with NEPA;

6.    Declare that Defendant violated NEPA in failing to supplement its NEPA analysis to account for significant new circumstances or information or substantial changes in the proposed action;

7.    Enjoin implementation of the 2006 ROD and BLM infill authorizations until such time as BLM has complied with NEPA, with the exception of drilling directional wells from existing wellpads;

8.    Void Defendant's actions authorizing the Encana and Ultra Resources drilling operation in the JIDPA or to cause impacts to the JIDPA;

9.    Order BLM to provide reasonable public notice and involvement in NEPA permitting actions prior to final authorization including: (1) notice to interested parties; (2) 30-day publication of proposed agency local periodicals; and/or (3) notice published in the Federal Register.

10.   Order Defendant to comply with the requirements of NEPA and APA and their respective implementing regulations by performing Defendant's mandatory procedural duties when considering whether or not to authorize surface use and occupancy for oil and gas

39  Biodiversity Conservation Alliance
   Complaint for Declaratory and Injunctive Relief

development in the JIDPA;

11.    Grant the Plaintiff's costs of litigation, including reasonable attorney fees as provided by
       the Equal Access to Justice Act, 28 U.S.C. § 2412; and

12.    Grant Plaintiff's such additional and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED on this 13 day of January, 2009.

MBudenske

s/Mary Ann Budenske Atty $ 5-2883
450 S. Wolcott
Casper, WY 82601
(307) 232-8725
Email mbudenske@aol.com

Attorney for Plaintiffs

40  Biodiversity Conservation Alliance

    Complaint for Declaratory and Injunctive Relief